OPINION
{¶ 1} Defendant-appellant, James L. Bennett, appeals his convictions for sexual battery and rape from the Brown County Court of Common Pleas. We affirm.
 {¶ 2} On June 25, 2003, appellant was indicted pursuant to a 60-count indictment charging him with ten counts of sexual battery, a third-degree felony pursuant to R.C. 2907.03(A)(5), and 50 counts of rape, a first-degree felony pursuant to R.C. 2907.02(A)(1)(b). The charges contained in the indictment were essentially "carbon copy" counts in which each of the sexual battery counts and each of the rape counts used identical wording.[1] Appellant absconded from the jurisdiction, but he was later located in Nashville, Tennessee. He was made available to the state of Ohio on October 3, 2003.
 {¶ 3} On November 26, 2003, the state provided appellant with a bill of particulars in which the state detailed additional specifics of the charges and grouped the 60 counts from the indictment into five separate categories of sexual abuse. These categories consisted of the following: (1) Counts 1-5, sexual battery, cunnilingus with the victim, C.H., when she was over the age of 13 but younger than 16; (2) Counts 6-10, sexual battery, digital penetration of C.H.'s vagina when she was over the age of 13 but younger than 16; (3) Counts 11-40, rape, digital penetration of C.H.'s vagina when she was less than 13 years old; (4) Counts 41-59, rape, cunnilingus with C.H. when she was less than 13 years old; and (5) Count 60, rape, penetration of C.H.'s vagina with a reddish-pink colored dildo when she was less than 13 years old. The bill of particulars further stated that C.H. was eight years old when the sexual offenses began in various homes in Aberdeen and Georgetown, Ohio, while appellant cohabitated with C.H.'s mother ("mother"). The bill of particulars described appellant's position as that of "a stepparent or loco parentis."
 {¶ 4} On April 1, 2004, appellant's jury trial began. The evidence showed that appellant began living with the mother and her two daughters in 1996. C.H., the younger daughter, was born on March 24, 1990. At trial, C.H. testified that when she was eight years old, appellant inserted his finger into her vagina and "moved it around." She stated that this offense took place in the bathroom of their residence on Market Street in Aberdeen, Brown County, Ohio. She said appellant would engage in this conduct "three to four times a week." Appellant also digitally penetrated C.H. in the downstairs living room of the Market Street residence.
 {¶ 5} The family moved to a different residence on High Street in Aberdeen, Brown County, Ohio, in 2000. C.H. testified that appellant began performing cunnilingus upon her in addition to the continued digital penetration of her vagina when she was ten years old. C.H. said that these events occurred in the evening in both her bedroom and living room.
 {¶ 6} After a brief stay in Maysville, Kentucky, the family moved to a residence on Mt. Orab Pike, Georgetown, Brown County, Ohio. C.H. stated that the sexual abuse only occurred in her bedroom at that location.
 {¶ 7} The family then moved to Eastland Mobile Home Park located in Georgetown, Brown County, Ohio. In that residence, C.H. testified that appellant continued to sexually abuse her, both digitally and by performing cunnilingus upon her, in various locations including the bedroom, living room, and family room. Again, the frequency of these events was three to four times a week until appellant moved out on April 30, 2003.
 {¶ 8} C.H. provided further testimony recalling a specific date when appellant "put his finger in [her] and his tongue and moved them around." These incidents took place on March 22, 2003, two days before C.H.'s 13th birthday. C.H. also testified to a separate, specific incident during which appellant inserted a red dildo into her vagina.
 {¶ 9} The jury returned guilty verdicts on Counts 1-4 (sexual battery, cunnilingus with C.H. between March 24, 2003 and April 30, 2003) and 11-60 (all rape counts that occurred between January 1, 1997 and March 23, 2003). At trial, appellant was found not guilty on one count of sexual battery, cunnilingus after March 24, 2003; and not guilty on all five counts of sexual battery, digital penetration of C.H. after March 24, 2003.
 {¶ 10} The trial court imposed four four-year prison terms for the sexual battery counts and 50 nine-year prison terms for each of the rape counts upon appellant. The court ordered Counts 11, 21, 31, 41, and 51 served consecutively to each other for an aggregate term of 45 years in prison. The remaining sentences were to be served concurrently. Appellant appeals the conviction raising three assignments or error.
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO BRING THE DEFENDANT TO TRIAL WITHIN THE TIME SET FORTH IN REVISED CODE SECTION 2945.71."
 {¶ 13} In his first assignment of error, appellant argues that he was not tried within the 270-day statutory speedy trial time limit provision provided in R.C. 2945.71. He also alleges that the trial court's nunc pro tunc entry continuing the trial was improper. We disagree.
 {¶ 14} The right to a speedy trial is guaranteed to all state criminal defendants by the Sixth and Fourteenth Amendments to the United States Constitution, Klopfer v. North Carolina (1967), 386 U.S. 213, 87 S.Ct. 988, and by Section 10, Article I of the Ohio Constitution. When reviewing a speedy trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71.State v. Riley, 162 Ohio App.3d 730, 2005-Ohio-4337, ¶ 19. The review involves a mixed question of law and fact. An appellate court will defer to the trial court's findings of fact but must independently review whether the trial court properly applied the law to those facts. Id.
 {¶ 15} R.C. 2945.71(C)(2) states that a person charged with a felony "[s]hall be brought to trial within two hundred seventy days after the person's arrest." Each day an accused is held in jail in lieu of bail shall be counted as three days for computation of time purposes. R.C.2945.71(E). The triple count of days, however, is not applicable when a defendant is being held on multiple charges pending separate trials.State v. Coleman (1989), 45 Ohio St.3d 298, 304. Furthermore, the time within which an accused must be brought to trial may be extended by, among other things, "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E).
 {¶ 16} After reviewing the record, we find that appellant's speedy trial claim is without merit. Appellant's trial was originally scheduled to begin on December 11, 2003. Prior to the scheduled start date, discussions were held in which appellant's trial counsel apparently sought a continuance. Both the court and appellant's counsel believed a motion to continue was filed that month. However, no formal request or motion was made or entered on the record.
 {¶ 17} On January 27, 2004, the trial court issued a nunc pro tunc entry stating that the trial was continued per counsel's request but the motion was "apparently not filed or docketed through inadvertence." The Ohio Supreme Court, in Cleveland Leader Printing Co. v. Green (1895),52 Ohio St. 487, paragraph one of the syllabus, stated, "The province of a nunc pro tunc entry is to correct the record of the court in a cause so as to make it set forth an act of the court which, though actually done at a former term thereof, was not entered upon the journal; and it cannot lawfully be employed to amend the record so as to make it show that some act was done at a former term which might or should have been, but was not, then performed."
 {¶ 18} We find the nunc pro tunc entry was proper in the case at bar because it only recorded that which both counsel and the trial court believed occurred, namely defense counsel's motion to continue. At appellant's motion to dismiss hearing, his trial counsel expressed his belief that in December 2003, he moved to continue. He explained to the court:
 {¶ 19} "I have informed Mr. Bennett that as an officer of the Court I must instruct the Court that it was my belief that, in fact, a Motion to Continue was filed with the Clerk's Office in the Month of December, 2003.
 {¶ 20} "We were scheduled for a jury trial on December 11th, 2003. My office staff indicates that the motion and entry was [sic] drafted. And it is her belief that it was, in fact, filed. As the Court is aware, I was on vacation immediately prior to that December 11th, would have been the morning that I returned home from vacation, and as such, you know, I feel that as an officer of the Court I must grant this information to the Court."
 {¶ 21} The court, addressing the record's omission of the motion to continue, explained its similar belief that the same had been filed in the following:
 {¶ 22} "I am also going to just note, for the record, and I did refer to this in the judgment entry, which I had previously filed in connection with this case, that the December 11th, 2003, jury trial, which was scheduled well within speedy-trial times, was continued at the request of the Defendant's attorney, * * *
 {¶ 23} "My Court staff has notes, which they prepare in the ordinary course of business, that, `This case was set for jury trial December 11 and 12, 2003. Notice was already prepared.' It says, `[Counsel] to talk with his client and get back with us today or first of week regarding the filing of a possible continuance.' I have notes which indicates [sic] where [counsel] was on the time that he was scheduled to be out of town, either immediate the proceeding or during the same period as the trial itself, so there was substantial contact by [counsel]."
 {¶ 24} The court further detailed trial counsel's agreement and belief that the motion was filed. The continuance's omission from the record was only a matter of inadvertence. The nunc pro tunc entry corrected the record to reflect what occurred, appellant's motion to continue. Appellant's December 11, 2003 court date fell well-within the 270-day statutory limit and was continued by trial counsel's own request. The entry did not impermissibly amend the record.
 {¶ 25} Furthermore, we find that appellant was brought to trial 174 days after his arrest, an amount within the 270-day statutory limit, even assuming for argument's sake that the trial court did not make a nunc pro tunc entry. Appellant was indicted on June 25, 2003, but was not arrested nor made available in Ohio until October 3, 2003. On October 6, 2003, appellant moved for discovery and a bill of particulars. Nine days were charged to the state. Appellant's motions for discovery and a bill of particulars, however, were tolling events pursuant to R.C. 2945.72(E).
 {¶ 26} On November 26, 2003, the state complied with appellant's discovery requests and filed a bill of particulars. The court found, and we agree, that the amount of discovery time was not unreasonable in light of the number of counts involved in the case at bar. Appellant's speedy trial time began to run again at the triple count pace from November 26, 2003 through January 8, 2004. 138 days were charged to the state.
 {¶ 27} On January 8, 2004, appellant was indicted in Brown County Criminal Case No. 2004-2008 stemming from rape charges in a different case. Because appellant was being held in custody on multiple charges pending separate trials, he was no longer entitled to the triple count provision of R.C. 2945.71(E). Accordingly, the state was charged with single count days from January 8, 2004 through February 13, 2004, the day appellant moved to dismiss the present case based upon the alleged violation of his right to a speedy trial. The additional 36 days raised the total amount of time to 174 days charged to the state. We find the trial court did not err when it denied appellant's motion to dismiss. Appellant's first assignment of error is overruled.
 {¶ 28} Assignment of Error No. 2:
 {¶ 29} "THE TRIAL COURT ERRED IN ALLOWING THE DEFENDANT TO BE CHARGED WITH TEN COUNTS OF SEXUAL BATTERY AND FORTY [sic] COUNTS OF RAPE IN WHICH EACH COUNT HAS IDENTICAL CLAIMS AND LACKS ANY SPECIFICITY."
 {¶ 30} Appellant asserts that his constitutional right to due process was violated when the state's indictment consisted of ten identical counts of sexual battery and 50 identical counts of rape. We disagree.
 {¶ 31} With respect to the specificity of the indictment, Ohio courts have generally held that in matters involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses cannot always be determined. State v. Daniel (1994), 97 Ohio App.3d 548,556. Thus unless times or dates are essential elements of the offenses, such specific times and dates need not be set forth in an indictment or bill of particulars. See State v. Bell (Apr. 30, 2001), Butler App. No. CA99-07-122.
 {¶ 32} The right to be informed of the nature and cause of an accusation provided for by the Sixth Amendment to the United States Constitution requires that a criminal defendant be provided with information concerning all of the elements of the offense charged. An indictment is sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy. Hamling v. U.S. (1974),418 U.S. 87, 118, 94 S.Ct. 2887. A criminal defendant may request a bill of particulars pursuant to Crim.R. 7(E). The purpose of a bill of particulars is "to elucidate or particularize the conduct of the accused alleged to constitute the charged offense" thereby providing the accused with a fair and reasonable opportunity to prepare his defense in light of a legally sufficient, but general, indictment. State v. Sellards (1985),17 Ohio St.3d 169, 171. A bill of particulars may be amended "at any time subject to such conditions as justice requires." Crim.R. 7(E).
 {¶ 33} In the case at bar, we find appellant's indictment stated the essential elements of both the sexual battery and rape charges. On October 6, 2003, appellant moved for a bill of particulars, and on November 26, 2003, the state complied and provided him with the requested document. As discussed in the previous section, appellant's trial, although originally scheduled to be held on December 11-12, 2003, began on April 1, 2004. At no point during the intervening four months did appellant raise the issue that he was unaware of the charges against him or that he was unable to prepare a defense because the charges in the indictment and bill of particulars were not specific enough. On the contrary, appellant's defense strategy centered on the fact that he never engaged in sexual conduct with C.H.
 {¶ 34} If, as alleged, the bill of particulars was insufficient to clarify the indictment, appellant could easily have requested amendment by the state. His failure to do so precludes him from establishing prejudice. See State v. Brumback (1996), 109 Ohio App.3d 65, 81-82. We find no violation of appellant's due process rights. Accordingly, we overrule appellant's second assignment of error.
 {¶ 35} Assignment of Error No. 3:
 {¶ 36} "THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANTA-PPELLANT'S MOTION FOR A DIRECTED VERDICT."[2]
 {¶ 37} In appellant's third assignment of error, he alleges the trial court erred when it denied his Crim.R. 29 motions. Appellant also argues that his convictions were against the manifest weight of the evidence. Both arguments are without merit.
 {¶ 38} An appellate court applies the same test in reviewing a denial of a Crim.R. 29 motion for acquittal as reviewing a challenge based on the sufficiency of the evidence. See State v. Thompkins, 78 Ohio St.3d 380,386, 1997-Ohio-52. Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence, viewed in a light most favorable to the prosecution, is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, 263-264.
 {¶ 39} Sexual battery is defined in R.C. 2907.03, in pertinent part, as follows:
 {¶ 40} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when * * *
 {¶ 41} "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."
 {¶ 42} Rape is defined in R.C. 2907.02, in pertinent part, as follows:
 {¶ 43} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * *
 {¶ 44} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."
 {¶ 45} In the case at bar, the state demonstrated that C.H. was born on March 24, 1990, and that appellant, in the position of a stepparent or in loco parentis, engaged in a pattern of sexual abuse with her. C.H. testified that appellant digitally penetrated her vagina three to four times a week in a variety of locations including: the bathroom and living room of the Market Street residence, the bedroom and living room of the High Street residence, the bedroom of the Mt. Orab Pike residence, and the bedroom, living room, and family room of the Eastland residence.
 {¶ 46} C.H. also testified that when she turned ten, appellant not only continued to digitally penetrate her, but he also performed cunnilingus upon her three to four times a week. These incidents occurred in bedroom and living room of the High Street residence, the bedroom of the Mt. Orab Pike residence, the bedroom, living room and family room of the Eastland residence.
 {¶ 47} C.H. identified a specific incident when appellant used a dildo and penetrated her vagina with it. She also testified that after her birthday, appellant continued to sexually abuse her multiple times each week until he was finally asked to leave the residence. We find, in viewing the evidence in a light most favorable to the prosecution, that a rational trier of facts could find that each material element of the crimes charged were proven beyond a reasonable doubt. The court correctly denied appellant's Crim.R. 29 motion.
 {¶ 48} Appellant argues that the convictions were against the manifest weight of the evidence. An appellate court, in considering whether a conviction was against the manifest weight of the evidence, must weigh the evidence and all reasonable inferences from it, consider the credibility of the witnesses and determine whether in resolving conflicts, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. This discretionary power should be exercised only in the exceptional case where the evidence weighs heavily against conviction. Id.
 {¶ 49} An appellate court will not reverse a judgment as being against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony.Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 50} After a thorough review of the record, we cannot say the jury clearly lost its way. Appellant argues that his convictions were based on the testimony of C.H. and he questions her credibility. The jury was in the best position to weigh the credibility of the witness and the weight to be given her testimony. She testified that appellant engaged in the sexual conduct in the previously described incidents. We cannot say that the jury's decision created a manifest miscarriage of justice requiring reversal based upon the record before us.
 {¶ 51} We find appellant's convictions for rape and sexual battery are supported by sufficient evidence. Furthermore, the convictions are not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is overruled.
 {¶ 52} Judgment affirmed.
Powell, P.J., and Bressler, J., concur.
[1] {¶ a} The sexual battery counts stated the following:
{¶ b} "That on or about the 24th day of March, 2003, through the 30th day of April, 2003, in Brown County, State of Ohio, the said James L. Bennett did engage in sexual conduct with C.H., not the spouse of the said James L. Bennett, the said James L. Bennett being the person in loco parentis to C.H., in violation of Section 2907.03(A)(5) of the Ohio Revised Code, a felony of the third degree."
{¶ c} Count 11-60, charging appellant with rape, all stated the following:
{¶ d} "That on or about the 1st day of January, 1997, through the 23rd day of March, 2003, in Brown County, State of Ohio, the said James L. Bennett did engage in sexual conduct with C.H., not the spouse of the said James L. Bennett, and, the said C.H. being less than thirteen (13) years of age, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, a felony of the first degree."
[2] After both the close of the state's evidence and all evidence, appellant's trial counsel moved for acquittal pursuant to Crim.R. 29. His third assignment of error has been construed to allege the erroneous denial of these motions.