[Cite as *State v. Garner*, 2012-Ohio-6271.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 CO 1 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| CARLOS R. GARNER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from the Court of
                                 Common Pleas of Columbiana County,
                                 Ohio
                                 Case No. 2010-CR-154

JUDGMENT:                        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:          Atty. Robert Herron
                                 Columbiana County Prosecutor
                                 Atty. Ryan P. Weikart
                                 Assistant Prosecuting Attorney
                                 105 South Market Street
                                 Lisbon, Ohio  44432

For Defendant-Appellant:         Atty. Matthew H. Gambrel
                                 839 Southwestern Run
                                 Youngstown, Ohio  44514

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

                                 Dated:  December 21, 2012

WAITE, P.J.

{¶1} Appellant, Carlos R. Garner, shot Rick Austin, Jr. in the parking lot of a bar in East Liverpool, Ohio on May 25, 2010. He was identified by two of four witnesses in photographic arrays containing eight individuals similar in age and appearance. On appeal, Appellant challenges the trial court's denial of his motions to suppress and for dismissal. He contends that the photo array was impermissibly suggestive and that the September 28, 2010 trial date was four days past a September 24, 2010 speedy trial deadline. Based on the record before us, Appellant's two assignments of error are without merit and are overruled.

Factual and Procedural History

{¶2} On May 25, 2010 Appellant shot Mr. Austin in the parking lot of the A1 Hideaway Bar in East Liverpool, Ohio. Witnesses described the shooter as a tall black male wearing a red jacket. Appellant fled the scene in a rented vehicle driven by his co-defendant, who is not involved in this appeal. Appellant headed to the East Liverpool Motor Lodge with two other individuals. The three men, along with drug paraphernalia and cocaine residue, were found in rooms at the Lodge. Appellant was apprehended while lying on a bed. Next to the bed, a red jacket was on the floor. All three men had large sums of money hidden in their shoes. The three were taken into custody and the red jacket along with the rest of the clothing belonging to all three men were collected and later sent to the crime lab for analysis.

{¶3} Two bar patrons, a bartender, and the victim were interviewed by the police in connection with the incident. Detective Donald Fickes of the East Liverpool Police Department used a computer program to randomly generate photo arrays that

included photographs of the three suspects. The detective generated three arrays of six images, each containing a photo of one of the three suspects. (8/30/10 Suppression Hrg. Tr., pp. 6-7.) Of the four witnesses interviewed by the police, two identified Appellant's photograph as the shooter. (8/30/10 Suppression Hrg. Tr., pp. 10, 13-14, 17, 19-20.)

{¶4} Appellant was arrested on May 26, 2010. On June 23, 2010, Appellant was indicted for felonious assault, in violation of R.C. 2903.11(A)(2), a second degree felony, with a firearm specification under R.C. 2941.145(A). Appellant was arraigned on July 22, 2010 and entered a not guilty plea; trial was set for August 17, 2010. On August 9, 2010 trial was continued until September 14, 2010. On September 8, 2010, the state asked for a two-week continuance due to a DNA-case backlog. The state provided a speedy trial timeline which indicated that the case would proceed to trial within the allotted time. The trial court granted the state a two week continuance from September 14, 2010 and set trial for September 28, 2010. On September 27, 2010, Appellant filed a motion to dismiss for violation of R.C. 2945.71(C)(2) and (E), alleging that more than 90 days had elapsed and no lawful tolling events had occurred. On September 28, 2010, the trial court denied Appellant's motion to dismiss. Also on that date, Appellant withdrew his original not-guilty plea and entered a plea of no contest to felonious assault with a firearm specification. (9/28/10 Hrg. Tr., p. 5.) The state recommended five years of imprisonment for the felony in addition to the mandatory three years for the firearms specification, for a total of eight years of incarceration, to be served consecutively. (9/28/10 Hrg. Tr., p. 6.)

**{¶5}** Appellant's sentencing hearing was held on December 3, 2010. The trial court sentenced Appellant for the recommended period, ordered restitution, and credited Appellant for one hundred and ninety-two days served. (12/3/10 Sentencing Hrg. Tr., pp. 26-28). This timely appeal followed.

<u>Argument and Law</u>

<u>ASSIGNMENT OF ERROR NO. 1</u>

The Trial Court committed reversible error when it allowed evidence stemming from a "photo array" identification that was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno* (1967), 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

**{¶6}** An appellate court's standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶8 citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Review is limited because "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (1994). An appellate court accepts the trial court's factual findings and relies on the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the court applied the appropriate legal standard. *Burnside, supra*, at ¶8, citing *State v.*

*McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (1997). A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial, credible evidence. *State v. Johnson*, 137 Ohio App.3d 847, 850, 739 N.E.2d 1249 (2000).

**{¶7}** In *U.S. v. Wade* the United States Supreme Court listed factors to consider when evaluating the constitutionality of a pretrial lineup identification. The factors are: the prior opportunity of the witness to observe the alleged criminal act; the existence of any discrepancy between any pre-lineup description and the defendant's actual description; any identification prior to the lineup of another person; identification by photograph of the defendant prior to the lineup; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the lineup identification. *U.S. v. Wade*, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). While the "due process clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification," "[a] defendant in a lineup need not be surrounded by people nearly identical in appearance." *State v. Sheardon*, 31 Ohio St.2d 20, 24, 285 N.E.2d 335 (1972) and *State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996).

**{¶8}** The witnesses in the present matter were separately shown eighteen photographs in sets of six. Each of the groupings included one of the three men apprehended at the motor lodge. The witnesses were instructed to look at the photographs and told that some of the photos might be old, so that they should look

at the faces and not concentrate on length of hair or facial hair. They were also told that the suspected shooter's photo may or may not be among them. Each witness was left alone with the photographs. Two of the four witnesses identified Appellant. The third witness identified another man; the fourth witness could not make a reliable identification.

{¶9} Appellant contends that the skin tones of the various men in the photo array were not close enough to his own and that, because he had the lightest skin tone in the array, it was impermissibly suggestive. The Ohio Supreme Court has held that a lineup in which the accused was with five other men of the same race, all of whom had facial hair like his, but none of whom had his bushy, curly hairstyle, and whose skin tones varied, was not impermissibly suggestive. *Davis*, *supra*, at 112. A second lineup in the same case, where the accused was the only one with jail slippers on his feet and no street clothes under his jail uniform, was similarly proper (the street clothes weren't visible to the witnesses, and according to police witnesses, other participants had similar footwear). *Id.* at 113. A review of the eighteen men in the photo array with Appellant reveals men of comparable age who appear similar to Appellant in appearance, features, skin tone, facial hair, dress and hairstyle.

{¶10} Although Appellant contends that he has the lightest skin tone, the array includes seventeen other men in varying lighting conditions, but in similar poses against similar backgrounds, a majority of whom appear to have the same skin tone as Appellant, and a few of whom appear to have a lighter skin tone than Appellant. Appellant cites *State v. McDade*, 1998 WL 682360 (11th Dist.) for the principle that

"[a] significant distinction in skin tones can taint a photo array." (Appellant's Brf., p. 7.) While this may be true, the *McDade* court actually upheld the photo array in question. Moreover, the photo array used in *McDade* appears to be similar to the arrays used in the matter at bar: "It is composed of six color photographs of black males of similar age, build, and facial structure. Appellant's picture is not distinctive." *Id.* at *6. The court in *McDade* continued to state, "appellant alleges that the gunman was described by the witnesses as a light-to-medium complected black man, and he had the lightest skin tone of any of the six men shown * * * [t]his is simply untrue * * * [a] review of Array I demonstrates that at least two of the other men actually had lighter skin than appellant." *Id.* The same appears true in the matter at bar. The Eleventh District explained that "even if appellant arguably had the lightest complexion of the six men, we would still not find the procedure to have been unduly suggestive because 'there was not such a significant difference in skin tones to make the distinction prejudicial.' " *Id.*, citing *State v. Cox*, Trumbull App. No. 95-T-5279, at 25 (May 23, 1997). The men in the photo array at bar appear to be more similar to Appellant than the members of the lineup upheld by the Supreme Court in *Davis* and at least as similar as those included in the array upheld by the Eleventh District in *McDade*. These facts, coupled with two of the witness's difficulty identifying Appellant, completely undermine a conclusion that the photo array was impermissibly suggestive.

{¶11} Appellant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 2

The trial court committed error when Defendant-Appellant, Carlos Garner, was denied his right to a speedy trial. *State v. Baker*, 78 Ohio St.3d 108, 110, 1997-Ohio-229, 676 N.E.2d 883, *State v. Davenport*, 12th Dist. No. CA2005-01-005, 2005-Ohio-6686, at ¶7, *Barker v. Wingo* (1972), 407 U.S. 514, 523, 92 S.Ct.2182, 33 L.Ed.2d 101.

**{¶12}** A criminal defendant is entitled to a trial without undue delay. In Ohio a criminal defendant's Sixth Amendment right to a speedy trial is protected by statute, R.C. 2945.73(B), which provides: "Upon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by Sections 2945.71 and 2945.72 of the Revised Code." Revised Code section 2945.71, titled "Time for trial" provides "[a] person against whom a charge of felony is pending: * * * (2) Shall be brought to trial within two hundred seventy days after the person's arrest." The statute also requires: "[f]or the purposes of computing time * * * each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." R.C. 2945.71(C)(2), (E). The Ohio Supreme Court has held that the provisions of R.C. 2945.71 and 2945.73, implementing Section 10 of Article I of Ohio's Constitution, relating to the guarantee of an accused's right to a speedy public trial, are mandatory and must be strictly complied with by the state. *State v. Davis*, 46 Ohio St.2d 444, 448, 349 N.E.2d 315 (1976). Revised Code section 2945.72 provides for certain statutory extensions of the times prescribed for hearing or trial:

The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

\* \* \*

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion.

R.C. 2945.72(H).

**{¶13}** Both Appellant and the state agree that Appellant was entitled, pursuant to R.C. 2945.71(C)(2) and (E), to go to trial within ninety days, not including the date of his arrest. Both parties begin the count on May 27, 2010. The parties agree that Appellant's discovery motion, filed July 28, 2010, the sixty-third day after Appellant's arrest, stopped the speedy trial clock. The parties agree the nine days that elapsed between Appellant's July 28, 2010 discovery motion and the state's August 6, 2010, response to discovery do not count against the speedy trial total. They agree that three days elapsed between the state's August 6, 2010 response to discovery and Appellant's August 9, 2010 motion to suppress the photo arrays, again tolling the clock and bringing the total count to 66 days.

**{¶14}** The parties diverge as to how the court should have addressed the August 9, 2010, motion to suppress. Appellant maintains that this motion stopped the speedy trial clock until August 30, 2010, when the trial court denied his motion to suppress, and that he never waived his speedy trial rights. Appellant does not

address any other issues or motions that arose on August 9, 2010. The state, however, quotes from the August 9, 2010 hearing transcript, during which a September 14, 2010 trial date was agreed-to by Appellant. Although the state cites at page 8 of its brief, "August 9 Hrg. Tr. at 3-4," no such transcript appears in the record. Without this transcript in the record, the remarks quoted by the state are not properly before us.

{¶15} In the trial court's judgment entry for August 9, 2010, however, it clearly grants "Defendant's Motion to Continue" and sets trial for September 14, 2010. The entry also orders a jury trial set for September 17th, cancelled. The "Sept. 17" portion of the entry, based on the prior scheduling order that set the final status conference for August 9, 2010 and the jury trial for August 17, 2010, appears to be a typographical error. Under R.C. 2945.72(H), any period of continuance granted on the accused's own motion extends the time for hearing or trial. Based on the trial court's August 9, 2010 judgment entry granting Appellant's motion for continuance and setting trial for September 14, 2010, the entire period between the August 9, 2010 motion for continuance and the September 14, 2010 trial date is tolled for speedy trial purposes because this period of time was granted on Appellant's own motion. Hence, the clock should begin to run again on day 67, September 15, 2010.

{¶16} However, On September 8, 2010, five days before the trial date, the state requested a continuance to allow DNA analysis of the clothing collected in the hotel rooms to be completed. According to the state, the analyst conducting the analysis had informed the state that an additional two weeks would be necessary to

complete the evaluation due to a backlog of DNA cases at that time. On September 13, 2010, the trial court found the request reasonable under R.C. 2945.72(H), granted the two-week continuance, and set the jury trial for September 28, 2010. Appellant contends that this continuance was unreasonable, and that if the two weeks granted by the trial court do not serve to stop the speedy trial time clock, his trial was actually conducted on the 94th day. Appellant's argument ignores the continuance of fourteen days between August 30, 2010 and September 14, 2010, which according to the court's August 9, 2010 judgment entry was granted pursuant to Appellant's August 9, 2010 motion. Because the full 36-day period between Appellant's August 9, 2010 motion for continuance and the September 14, 2010 trial date extends the trial timeline, the two-week continuance requested by the state is irrelevant. Even if we do not count the 14 days between September 14, 2010 and September 28, 2010 as tolling the speedy trial time, Appellant's trial was held on day 80. However, the trial court's decision to grant the state's request for a continuance of two weeks appears to be entirely reasonable and serves to, additionally, toll the speedy trial time clock.

{¶17} Appellant's second assignment of error is without merit and is overruled.

### Conclusion

{¶18} The photo array prepared by the East Liverpool Police Department was comprised of individuals similar in age and physical features to Appellant and was not impermissibly suggestive. Appellant's calculation of his speedy trial did not take into

account all motions reasonably granted by the trial court that served to extend the trial timeline.  His trial was timely.  Appellant's two assignments of error are overruled and the judgment of the trial court is affirmed.